1  Deborah Gettleman (SBN 267309)
   Deepinder Goraya (SBN 290483)
2  McGUINNESS LAW GROUP, PC
   155 Grand Avenue, Suite 900
3  Oakland, CA 94612
   Telephone: (510) 439-2950
4  Facsimile: (510) 439-2951
   Email: dgettleman@mcguinness-legal.com
5         dgoraya@mcguinness-legal.com

6
   Attorneys for Plaintiffs Samuel Lewis and Patricia Olison
7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11 | SAMUEL LEWIS AND PATRICIA          | CASE NO.
12 | OLISON                             |
   |                                    | Civil Rights
13 |           Plaintiffs,              |
   |                                    | **COMPLAINT FOR INJUNCTIVE RELIEF**
14 |     v.                             | **AND DAMAGES**
15 | HILLTOP GROUP, L.P.; CIRRUS ASSET  |
   | MANAGEMENT, INC.                   |     1. Violation of the Federal Fair Housing Act,
16 |                                    |        42 U.S.C. § 3601 *et seq.*
   |           Defendants.              |
17 |                                    |     2. Violation of the Fair Employment and
18 |                                    |        Housing Act, Cal. Gov't Code § 12955 *et seq.*
19 |                                    |     3. Violation of California Government Code
20 |                                    |        § 11135
21 |                                    |     4. Violation of the Unruh Civil Rights Act,
   |                                    |        Cal. Civil Code §51 *et seq.*
22 |                                    |
23 |                                    |     5. Violation of the Disabled Persons Act, Cal.
   |                                    |        Civil Code § 54 *et seq.*
24 |                                    |     6.  Breach of the Warranty of Habitability
25 |                                    |     7. Negligence
26 |                                    |     **DEMAND FOR JURY TRIAL**
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.      This case concerns the failure to accommodate two residents with physical disabilities, Samuel Lewis and Patricia Olison, by refusing to address the elevator and accessibility issues throughout their apartment complex. Defendants are Hilltop Group, L.P., the corporate owners, and Cirrus Asset Management, Inc., the management company of Heritage Park at Hilltop Apartments ("Heritage Park"), a large senior apartment complex in Richmond, CA.

2.      Defendants advertise Heritage Park as an affordable senior community with amenities such as an elevator, on-site management, laundry facilities, pool, and fitness center all as part of a gated community. In reality, the complex is neglected, the gates are often left open, permitting anyone to enter off the street, the elevators often malfunction or do not work at all, and on-site management does not want to be bothered-leaving senior tenants, particularly those with disabilities, stranded and vulnerable.

3.      Both Plaintiffs have suffered due to Defendants' persistent failure to make their premises safe and accessible and refusal to grant reasonable accommodation requests. By this action, Plaintiffs seek the Court's assistance in forcing Defendants to live up to their responsibilities under federal, state and local disability laws. Plaintiffs also seek compensatory, statutory and punitive damages, as well as reasonable attorney fees, for the discrimination they have been forced to endure at the hands of Defendants.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over Plaintiffs' claims brought under federal law pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The state law claims are so related to the federal action that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

5.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this District and that Plaintiffs' causes of action arose in this District.

**PARTIES AND THE PROPERTY**

6.      The property, known as Heritage Park at Hilltop ("Heritage Park"), is a 192-unit, three-story residential apartment complex located in Richmond, California.  It receives a State subsidy in the form of Low-Income Housing Tax Credits, which ensures a certain portion of apartments at Heritage Park remain available for lower-income households.

7.      Heritage Park is comprised of three L-shaped buildings, each with a single elevator. The first building contains the "A" and "B" apartments (the "A/B Building"). The second building contains the "C" and "D" apartments (the "C/D Building"). The third building contains the "E" and "F" apartments (the "E/F Building").

8.      Plaintiff Samual Lewis has been a tenant at Heritage Park at all times relevant to the Complaint, and lives on the second floor of the C/D Building.

9.      Mr. Lewis is a person with a disability within the meaning of the federal Fair Housing Act. 42 U.S.C. Section 3602(h). He has a physical impairment that limits one or more major life activities.

10.      Mr. Lewis has medical conditions that substantially limit his daily activity of walking. He uses a scooter for mobility most of the time, and at other times uses a cane. He is easily fatigued with physical exertion and is in constant pain due to his medical conditions.

11.      Without access to a working elevator, it is extremely difficult for Mr. Lewis to get to his apartment unit or to the building exit independently and safely. He can use the stairs only with great difficulty. He must lean his full weight on both arms, which he places on either side of the stair railing, to lift himself down each step, and then either pull himself up each step or sit on his bottom and scoot up each step. This puts a lot of weight on his arms and makes him very tired and weak. He has to recover for up to an hour after going down the stairs.

12.      Plaintiff Patricia Olison has been a tenant at Heritage Park Apartments at all times relevant to the complaint, and lives on the second floor of the C/D Building.

13.      Ms. Olison is a person with a disability within the meaning of the federal Fair Housing Act. 42 U.S.C. Section 3602(h). She has physical impairments that limit one or more major life activities.

14.     Ms. Olison has medical conditions that substantially limit her daily activity of walking, including bone to bone touching in both knees, poor circulation, and vertigo. She primarily uses a cane for mobility. She is easily fatigued due to her disabilities.

15.     Without access to a working elevator, it is extremely difficult for Ms. Olison to get to her apartment unit or to the building exit independently and safely. She can use the stairs only with great difficulty and must rely on assistance.

16.     Defendant Hilltop Group L.P. is the real property owner of Heritage Park. Its two general partners are Riverside Charitable Corporation, a California Charitable Corporation, and SUBGP 702 Hilltop LLC, a Delaware corporation.

17.     Defendant Cirrus Asset Management, Inc. is an asset and property management company, and is the property manager of Heritage Park. It owns and manages a portfolio of properties across various states, including more than 8,000 apartment units.

## HERITAGE PARK ELEVATORS

18.     The elevators in all three of the Heritage Park buildings (A/B, C/D and E/F) are frequently out of service.

19.     The elevator in the C/D Building tends to stop on the incorrect floor, such as stopping on floor 3 instead of floor 2.  At times, the doors stay open on a particular floor and the elevator cannot be called. It also tends to stop several inches above the floor level, making it difficult to enter and exit with a scooter. The controls are often broken or missing, and exposed wires hang down on the emergency panel.

20.     Ms. Olison began to notice issues with the elevators as early as January 2023.

21.     Ms. Olison received a notice from the management office on January 10, 2023 stating that the elevators would be down until further notice, and telling residents to utilize the stairs. The elevators remained inoperable for several days. Since Ms. Olison could not use the stairs without risking her health and safety, she had no choice but to remain inside her unit and cancel all doctor's appointments, errands, and work-related activities during that time.

22.     Elevator records show that the elevators in all three buildings were inspected on

January 19, 2023 and nine items were identified as being non-compliant. The records show that no permit was issued, and would not be issued, until these items were corrected.

23.     Elevator records show that on April 26, 2023, an order was issued prohibiting use of the elevators in all three buildings due to non-compliance with preliminary safety orders. Records further show that these elevators did not have a valid safety permit and should not have been operating.

24.     Elevator records show that the elevators in all three buildings continued to operate without a valid safety permit as late as November 22, 2023.

25.     Elevator records show that the elevators in all three buildings finally became compliant on December 28, 2023, almost a year from when the order prohibiting use was issued.

26.     On January 9, 2024, the elevator in the C/D Building was again out of service for three days, until January 12. Ms. Olison had run out of food and had no choice but to take the stairs down to get essential groceries. After returning, she had to be helped up the stairs by maintenance because of her knee and back pain. Ms. Olison was in agonizing pain at each step.

27.     From January through June of 2024, the elevator in the C/D building was inoperable for at least four to five days each month.

28.     In mid-February of 2024, the elevator in the C/D Building trapped Mr. Lewis and another tenant inside. Mr. Lewis becomes claustrophobic in confined spaces, and being trapped in the elevator made him panicky and anxious. Mr. Lewis was only able to get out of the elevator when another tenant, who happened to push the elevator button from the outside, opened the outer doors.

29.     In March of 2024, Mr. Lewis was again trapped in the elevator for over twenty minutes. It was the weekend. Mr. Lewis pushed the emergency button and it did not work, and the panel swung open. He then called the on-site resident manager, Lois Tarpeh, as he was instructed to do for emergencies. She sounded annoyed to get his call. She called Maintenance to get him out. Maintenance pushed the elevator button from the outside and the door opened. After this incident, Mr. Lewis received a text from Ms. Tarpeh telling him to just call Maintenance in the future, implying that he should not call her.

30.     In or around mid-April of 2024, Mr. Lewis and Ms. Olison, along with another resident, noticed that the elevator was out again. Mr. Lewis could not get up the stairs, and had to wait in the community room for two hours until the elevator was repaired. Mr. Lewis reported this to the management office and submitted a repair request. Ms. Olison could not get to the second floor and had to climb the stairs with assistance from a Maintenance worker. She was so exhausted from this effort that she had to rest for an hour before she could report this incident to management. Management responded and said they were aware, and would repair the elevator as soon as possible.

31.     The elevator in the C/D Building went out again the very next day when Mr. Lewis and Ms. Olison attempted to use it. They were trapped in the elevator yet again, and had to pry open the inner doors to release the mechanism to open the outer doors.

32.     In late June of 2024, management sent notices to residents stating that the elevators in all three buildings would simultaneously be out of service. They did not specify a duration. In fact, the elevators were out for approximately two weeks (referred to hereinafter as "the two-week period.")

33.     During the two-week period, tenants were stuck in their units and had to rely on maintenance, and eventually the fire department, for assistance climbing up and down the stairs.

34.     During the two-week period, Mr. Lewis had to leave his apartment to get essential groceries. He was forced to painfully go down the stairs, as he had to put both of his arms on either railing and support his weight on them to go down each step. To go back up the stairs, he had to scoot up the stairs on his bottom, pulling himself up each step with his arms. It took him 35 minutes to go up the stairs. He was so exhausted by this effort and in pain, that for the rest of the two-week period, Mr. Lewis remained in his apartment, unable and afraid to leave.

35.     In early July of 2024, Mr. Lewis was again stuck in the elevator. This time in the A/B Building, along with another tenant, for an hour and a half. Mr. Lewis again became claustrophobic and banged on the door. The doors only opened after another tenant eventually came by and opened the outer doors.

36.     Plaintiffs have friends in the A/B building and would like to return to visit them

but is afraid of getting trapped in the elevator again.

37.     Both Plaintiffs are on the tenant association counsel at Heritage Park and frequently deliver food and packages and check in on fellow tenants in all three buildings. Mr. Lewis's mother lives in the E/F building and he visits her multiple times a week.

38.     In August of 2024, Ms. Olison was again unable to use the elevator when trying to get to the second floor in the C/D Building. She was only able to get up the stairs with assistance from management.

39.     Neither Plaintiff can use the stairs without risking injury and fatigue and enduring extreme pain. During elevator outages, each are trapped in their apartments, while tenants without physical disabilities can use the stairs to come and go.

40.     Defendants advertise Heritage Park as a complex for 55+ seniors. The elevator outages and Defendants' refusal to repair the elevator ignores the physical limitations of their resident tenants and puts them at risk of injury.

41.     Defendants did not offer alternative accessible accommodations to tenants they knew were disabled and unable to safely climb or descend the stairs.

42.     Plaintiffs Lewis and Olison have reported the elevator outages both verbally and in writing to both the corporate office and to management several times. Mr. Lewis submitted several elevator repair requests in 2024 alone, including in June and July. In his June 8, 2024 repair request, he stated that he and other residents need the elevators to be reliable for scooter and wheelchair access, and that he could not "crawl" up the stairs anymore. In his July 14, 2024 request, he reported that the elevator car doors were "acting up again" and that he was missing an important doctor's appointment and could not "afford to get stuck." To all of these requests, management has simply responded that they are "looking into it" but have failed to maintain the elevators in continuous working and safe order.

43.     Tenants have also met with Management several times individually and at community meetings about the elevator and security issues at Heritage Park

44.     For the duration of each elevator outage, Defendants never contacted Plaintiffs to ensure they were safe in their homes.

45.     While the elevators have been inoperable, Defendants have failed to offer relocation assistance or other accommodations to Plaintiffs to access the outside world. Only recently did Defendants notify Heritage Park tenants that they may be required to temporarily relocate while they complete elevator repairs, with housing provided and reasonable out-of-pocket expenses paid for.

46.     Plaintiffs first received a notice from Management on December 5, 2024 stating that modifications would be made to the elevators on January 9, 2025 and would take 23 days. They also had a meeting on December 9, 2024 at which Management discussed relocating residents while the elevators were repaired. But no immediate action was taken.

47.     Plaintiffs received another notice on January 6, 2025 stating that the elevators would be undergoing rehabilitation in the near future.

48.     Plaintiffs then received a notice of non-displacement on January 13, 2025 stating that residents would be relocated for 30 days if they wished, while the elevators were undergoing a rehabilitation. They attended a community town hall meeting on January 15, held by management, where the elevator rehabilitation and temporary relocation were discussed in more detail.

49.     Mr. Lewis signed his relocation notice and submitted his paperwork on January 22, 2025.

50.     Ms. Olison signed her relocation notice and submitted her relocation paperwork on February 13, 2025.

51.     Neither Plaintiff has received further communication with Defendants since submitting their relocation paperwork about when they will have to relocate or where to.

<u>DENIAL OF REASONABLE ACCOMMODATION-LACK OF KEY FOB ACCESS</u>

52.     In January of 2025, management reclaimed all Heritage Park tenant key fobs to reprogram. During this reprogramming, management rescinded Mr. Lewis's access to the side door of his building, which is closer to his unit. He can now only enter through the back door of the C/D building, which is 80 feet further from his designated parking spot. Mr. Lewis is forced to maneuver the entire way around the building to enter through this back door.

53.    Mr. Lewis has requested access to all entrances to his building (something he had access to previously) at least once a month since October of 2024. Each time, management has simply stated they are "working on it." However, Management has been working on reprogramming the key fobs for at least five months now.

## DEFENDANTS HAVE COMPROMISED THE SAFETY OF PLAINTIFFS AND OTHER DISABLED TENANTS AT HERITAGE PARK

54.    Defendants have compromised the safety of Heritage Park residents, including Plaintiffs, by not taking proper security measures. The complex is in a dangerous neighborhood surrounded by a gate that opens with a Heritage-Park issued fob. However, these gates are often left open during the day by management. At one point, Ms. Olison confronted a manager about the open gates, and expressed that they should be closed, as it was a security concern. The manager told her that the gates were intentionally left open for UPS, even though UPS drivers had their own fob to open the gates.

55.    The lack of security enforcement has led to an environment of theft and vandalism at Heritage Park. Homeless individuals often wander into the complex. Ms. Olison has had items stolen from her vehicle on multiple occasions, including the catalytic converter. Tenants, including Plaintiffs, who are already vulnerable due to their disability and/or age, are in constant fear for their safety.

## DEFENDANTS ARE SERIAL VIOLATORS OF THEIR DISABLED TENANTS' HOUSING RIGHTS

56.    Defendants have been on notice of the access, maintenance and safety issues with the Heritage Park elevators and the complex since August of 2021, when a previous lawsuit with almost identical claims, was filed. Despite promising regular maintenance and security protocol in order to settle that lawsuit, they have intentionally neglected regular maintenance and repairs.

57.    In the 2021 lawsuit, four different tenants (Diane Holden, Betty Joubert, Audrey Jenkins, and Robin Lape) sued Defendant Hilltop Group and its former property management

1  company, USA Properties Fund, Inc., for failure to maintain these same elevators and for

2  neglecting important security measures at the complex. Ms. Holden, who has physical limitations

3  like Plaintiffs, fell down the stairs sustaining significant personal injury when she was forced to

4  try to climb the stairs back up to her unit during an elevator outage. Litigation resulted in a court

5  enforceable settlement agreement ("CESA") on October 3, 2022. *Diane Holden et al. v. Hilltop*

6  *Group, L.P. et al., CASE NO. 21-cv-06000-DMR.*

7      58.    Under the CESA, Defendants were to ensure preventative monthly maintenance of

8  the elevators at Heritage Park by a reputable third-party elevator service company. This

9  maintenance was to include monthly elevator inspections, provision of on-call technicians

10  available at all times including evenings and weekends, and ongoing compliance with all

11  applicable elevator safety orders, including ANSI standards for lifts and conveyances.

12      59.    The CESA also required Defendants to do the following:

13          a.  hold quarterly meetings with tenants to be attended by an employee at the

14              regional manager level or above;

15          b.  conduct annual trainings of all staff and managers who interact with tenants

16              and applicants on how to receive and respond to reasonable accommodation

17              requests;

18          c.  notify tenants about the length of any planned elevator service interruption;

19          d.  plan a means for safe exit and entry of the building by tenants during an

20              extended unplanned elevator outage;

21          e.  Provide a standing security guard for eight hours between the hours of 5 PM

22              and 9 AM on two random nights per week; and

23          f.  Provide a courtesy patrol five nights per week during the hours of 5 PM to 9

24              AM who will walk the property four times per night to ensure all exterior gates

25              and doors are closed, and to direct any trespassers off the property.

26      60.    Defendants have failed to comply with these terms. Specifically, they have not

27  held planned quarterly meetings with tenants, have not notified tenants about the length of any

28  planned elevator service interruption, have not planned a means for safe exit and entry of the

building by tenants during extended unplanned elevator outages, there is no security guard on two random nights a week and there is no courtesy patrol five nights a week. Despite agreeing to its terms, Defendants intentionally refused to comply with the CESA.

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE FEDERAL FAIR HOUSING ACT
### [42 U.S.C. § 3601 et seq.]

61.     Plaintiffs incorporate by reference the preceding paragraphs.

62.     The federal Fair Housing Act (FHA) makes it unlawful for a housing provider "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in or intending to reside in that dwelling after it is sold or made available; or any person associated with that person." 42 U.S.C. § 3604(f)(2); 24 C.F.R. § 100.202(b).

63.     Discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(3)(B); 24 C.F.R. § 100.204(a).

64.     Discrimination under the FHA also includes "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of …handicap." 24 C.F.R. § 100.65(b)(2).

65.     Defendants are multifamily housing providers subject to the FHA.

66.     Plaintiffs are qualified individuals with disabilities within the meaning of the FHA. 42 U.S.C. §3602(h).

67.     Defendants knew of Mr. Lewis's disabilities. First, they are obvious. Second, Heritage Park management had copies of Mr. Lewis's medical imaging records on file showing his medical diagnosis and mobility issues. Despite this, management also requested an updated "accommodations packet" from Mr. Lewis around April or May of 2024, wherein Mr. Lewis signed a waiver releasing his medical records to Management.

68.     Defendants knew of Ms. Olison's disabilities. They are obvious and she had

already submitted verifications of her disability with management in 2023.

69.    Defendants' actions and omissions discriminate against Plaintiffs solely because of their disability in violation of the FHA. Defendants discriminatory conduct includes but is not limited to:

      a.  Failing to make their premises accessible to and usable by tenants with disabilities;

      b.  Repeatedly failing or delaying maintenance and repairs of the elevators, which is the sole manner of ingress and egress to many tenants with physical disabilities above the first floor;

      c.  Failing to implement lawful reasonable accommodation policies, notice policies, and emergency evacuation policies;

      d.  Failing to make reasonable modifications to policies and procedures where necessary to provide disabled tenants full and equal enjoyment of the premises ;

      e.  Failing to ensure that Plaintiffs and others similarly situated have equal access to their housing when the elevators go out of service;

      f.  Failing to construct and maintain accessible features; and

      g.  Maintaining a policy requiring Plaintiffs to use the stairs if the elevators are out of service.

70.    Defendants' violations of the FHA are ongoing.  They have harmed and will continue to harm Plaintiffs in the future.

71.    Defendants' actions demonstrate a knowing and conscious disregard for the rights of disabled tenants.  Such conduct justifies an award of punitive and exemplary damages in addition to all other relief sought.

72.    Plaintiffs suffered actual harms and losses including but not limited to physical and mental pain, fear, degradation, and emotional distress because of the discrimination that they each experienced .

73.    Plaintiffs Lewis and Olison's harms and losses are ongoing so long as Defendants

do not modify their policies and procedures and provide fully accessible and safe facilities for Plaintiffs and other persons with mobility disabilities.

74.     Plaintiffs have no adequate remedy at law to compensate them for their lost opportunities of equally and fully enjoying the housing amenities for which they pay. Plaintiffs therefore seek an order enjoining Defendants to make the required repairs and grant the necessary reasonable accommodations in order to allow them equal access to Heritage Park's amenities, and an order enjoining Defendants to take adequate steps to prevent any such discrimination in the future.

WHEREFORE, Plaintiffs request relief as outlined below.

### SECOND CAUSE OF ACTION
### VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
### [Cal. Government Code § 12900 *et seq.*]

75.     Plaintiffs incorporate by reference the preceding paragraphs.

76.     The California Fair Employment and Housing Act (FEHA) makes it unlawful "[f]or any person subject to the provisions of the [Unruh Civil Rights Act] section 51 of the Civil Code … to discriminate against any person" on any basis protected under FEHA. Cal. Gov't Code § 12955(d).

77.     Defendants are multifamily housing providers subject to FEHA.

78.     Plaintiffs are individuals with disabilities within the meaning of FEHA.

79.     Defendants' actions and omissions discriminate against Plaintiffs solely because of their disability in violation of FEHA. Defendants discriminatory conduct includes but is not limited to:

   a.  Failing to make their premises accessible to and usable by tenants with disabilities;

   b.  Repeatedly failing or delaying maintenance and repairs of the elevators, which is the sole manner of ingress and egress to many tenants with physical disabilities above the first floor;

   c.  Failing to implement lawful reasonable accommodation policies, notice

policies, and emergency evacuation policies;

    d. Failing to make reasonable modifications to policies and procedures and reinstate key fob access to all previously accessible entrances to Plaintiffs' building, including entrances closest to their apartment units;

    e. Failing to ensure that Plaintiffs and others similarly situated have equal access to their housing when the elevators go out of service;

    f. Failing to construct and maintain accessible features; and

    g. Maintaining a policy requiring Plaintiffs to use the stairs if the elevators are out of service.

80. Defendants' violations of FEHA are ongoing. They have harmed and will continue to harm Plaintiffs in the future.

81. Defendants' actions demonstrate a knowing and conscious disregard for the rights of disabled tenants. Such conduct justifies an award of punitive and exemplary damages in addition to all other relief sought.

82. Plaintiffs suffered actual harms and losses including but not limited to physical and mental pain, fear, degradation, and emotional distress because of the discrimination that they each experienced .

83. Plaintiffs Lewis and Olison's harms and losses are ongoing so long as Defendants do not modify their policies and procedures and provide fully accessible and safe facilities for Plaintiffs and other persons with mobility disabilities.

84. Plaintiffs have no adequate remedy at law to compensate them for their lost opportunities of equally and fully enjoying the housing amenities for which they pay. Plaintiffs therefore seek an order enjoining Defendants to make the required repairs and grant the necessary reasonable accommodations in order to allow them equal access to Heritage Park's amenities, and an order enjoining Defendants to take adequate steps to prevent any such discrimination in the future.

WHEREFORE, Plaintiffs request relief as outlined below.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135**

85.    Plaintiffs incorporate by reference the preceding paragraphs.

86.    California law affords people with disabilities a right to "equal access" to programs and activities subsidized by state funds; such programs may not discriminate against people with disabilities. Cal. Gov't Code § 11135(a).

87.    State-funded programs may not deny a person the opportunity to participate in, or benefit from, its services and programs. 2 Cal. Code Regs § 11154(a). Such programs must provide effective access that results in an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others. *Id*. at § 11154(c). Such programs may not "otherwise limit a person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by" the general public. *Id*. at § 11154(g).

88.    Based on a review of public records, Defendants receive financial assistance from the State of California in the form of Low-Income Tax Credits sufficient to invoke the coverage of Government Code Section 11135.

89.    At all times relevant to this action, Plaintiffs have been and are qualified individuals with a disability within the meaning of California law. Cal. Gov't Code § 12926.

90.    Defendants' actions and omissions discriminate against Plaintiffs solely because of their disability in violation of Section 11135 and its regulations. Defendants' discriminatory conduct includes but is not limited to:

      a.    Failing to make their premises accessible to and usable by tenants with disabilities;

      b.    Repeatedly failing or delaying maintenance and repairs of the elevators, which is the sole manner of ingress and egress to many tenants with physical disabilities above the first floor;

      c.    Failing to implement lawful reasonable accommodation policies, notice policies, and emergency evacuation policies;

      d.    Failing to make reasonable modifications to policies and procedures

and reinstate key fob access to all previously accessible entrances to

Plaintiffs' building, including entrances closest to their apartment units;

e.  Failing to ensure that Plaintiffs and others similarly situated have equal

access to their housing when the elevators go out of service;

f.  Failing to construct and maintain accessible features; and

g.  Maintaining a policy requiring Plaintiffs to use the stairs if the elevators

are out of service.

91.     Pursuant to California Government Code § 11139, Plaintiffs have a private right of action to enforce California Government Code § 11135(b).

92.     Defendants' violations of California Government Code 11135 are ongoing.  They have harmed and will continue to harm Plaintiffs in the future.

93.     Plaintiffs Lewis and Olison's harms and losses are ongoing so long as Defendants do not modify their policies and procedures and provide fully accessible and safe facilities for Plaintiffs and other persons with mobility disabilities.

94.     Plaintiffs have no adequate remedy at law to compensate them for their lost opportunities of equally and fully enjoying the housing amenities for which they pay. Plaintiffs therefore seek an order enjoining Defendants to make the required repairs and grant the necessary reasonable accommodations in order to allow them equal access to Heritage Park's amenities, and an order enjoining Defendants to take adequate steps to prevent any such discrimination in the future.

WHEREFORE, Plaintiffs request relief as outlined below.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF THE UNRUH CIVIL RIGHTS ACT**
**[Cal. Civil Code § 51 *et seq.*]**

95.     Plaintiffs incorporate by reference the preceding paragraphs.

96.     The Unruh Civil Rights Act ("Unruh Act") provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their disability [or] medical

condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

97.     Defendants are a business establishment in their operation of Heritage Park under the Unruh Act because they are a housing accommodation that provides goods, services and facilities in exchange for money.

98.     At all times relevant to this action, Plaintiffs have been and are qualified individuals with a disability within the meaning of California law.

99.     Defendants' acts and omissions were by reason of Plaintiffs' disabilities.

100.    Defendants' discriminatory conduct includes but is not limited to:

     a.  Failing to make their premises accessible to and usable by tenants with disabilities;

     b.  Repeatedly failing or delaying maintenance and repairs of the elevators, which is the sole manner of ingress and egress to many tenants with physical disabilities above the first floor;

     c.  Failing to implement lawful reasonable accommodation policies, notice policies, and emergency evacuation policies;

     d.  Failing to make reasonable modifications to policies and procedures and reinstate key fob access to all previously accessible entrances to Plaintiffs' building, including entrances closest to their apartment units;

     e.  Failing to ensure that Plaintiffs and others similarly situated have equal access to their housing when the elevators go out of service;

     f.  Failing to construct and maintain accessible features; and

     g.  Maintaining a policy requiring Plaintiffs to use the stairs if the elevators are out of service.

101.    Defendants' actions constitute intentional discrimination against Plaintiffs under the Unruh Act because they have actual knowledge that Plaintiffs and other tenants at Heritage Park are persons with mobility disabilities who need accessible features and reasonable accommodations to have equal access to their homes but did nothing to address the issues with

1    the elevator and safety.

2         102.    Defendants were sued three years ago on an almost identical set of facts and

3    Defendants represented to the Court that they would cure the elevator outages and safety issues,

4    but did not. Defendants affirmatively decided not to maintain the elevators in proper working

5    order at Heritage Park, despite being on notice for years and receiving numerous preliminary

6    safety orders and an order prohibiting use from Cal OSHA. Defendants failed to conduct

7    quarterly meetings with tenants; failed to be available to Plaintiffs after hours for emergencies;

8    failed to grant Plaintiff Lewis a reasonable accommodation of granting key fob access to all

9    entrances of his building, including to the entrance closest to his unit; failed to implement proper

10   security measures for the complex to prohibit trespassers onto the property; and failed to comply

11   in general with the prior CESA despite being on notice of the harm that was and could continue to

12   befall the elderly residents who live there. Defendants' actions therefore led to the exacerbation of

13   Plaintiffs' physical disabilities.

14        103.    Defendants' violations of Unruh are ongoing.  They have harmed and will

15   continue to harm Plaintiffs in the future.

16        104.    Defendants' actions demonstrate a knowing and conscious disregard for the rights

17   of disabled tenants.  Such conduct justifies an award of punitive and exemplary damages in

18   addition to all other relief sought.

19        105.    Plaintiffs suffered actual harms and losses including but not limited to physical

20   and mental pain, fear, degradation, and emotional distress because of the discrimination that they

21   each experienced .

22        106.    Plaintiffs Lewis and Olison's harms and losses are ongoing so long as Defendants

23   do not modify their policies and procedures and provide fully accessible and safe facilities for

24   Plaintiffs and other persons with mobility disabilities.

25        107.    Plaintiffs have no adequate remedy at law to compensate them for their lost

26   opportunities of equally and fully enjoying the housing amenities for which they pay. Plaintiffs

27   therefore seek an order enjoining Defendants to make the required repairs and grant the necessary

28   reasonable accommodations in order to allow them equal access to Heritage Park's amenities, and

1    an order enjoining Defendants to take adequate steps to prevent any such discrimination in the

2    future.

3          WHEREFORE, Plaintiffs request relief as outlined below.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA DISABLED PERSONS ACT**
**[Cal. Civil Code § 54 *et. seq.*]**

6    108.    Plaintiffs incorporate by reference the preceding paragraphs.

7    109.    The Disabled Persons Act (DPA) states, "Individuals with disabilities shall be

8    entitled to full and equal access, as other members of the general public, to all housing

9    accommodations offered for rent, lease, or compensation in this state, subject to the conditions

10   and limitations established by law, or state or federal regulation, and applicable alike to all

11   persons." Cal. Civil Code § 54.1(b)(1).

12   110.    Heritage Park is a housing accommodation within the meaning of Civil Code

13   section 54.1(b)(2). Plaintiffs are persons with disabilities within the meaning of the DPA. Cal.

14   Civil Code § 54.

15   111.    Based upon the foregoing, Defendants have violated the DPA as follows:

16          a.   Failing to make their premises accessible to and usable by tenants with

17               disabilities;

18          b.   Repeatedly failing or delaying maintenance and repairs of the elevators,

19               which is the sole manner of ingress and egress to many tenants with

20               physical disabilities above the first floor;

21          c.   Failing to implement lawful reasonable accommodation policies, notice

22               policies, and emergency evacuation policies;

23          d.   Failing to make reasonable modifications to policies and procedures

24               and reinstate key fob access to all previously accessible entrances to

25               Plaintiffs' building, including entrances closest to their apartment units;

26          e.   Failing to ensure that Plaintiffs and others similarly situated have equal

27               access to their housing when the elevators go out of service,

28          f.   Maintaining a policy requiring Plaintiffs to use the stairs if the elevators

1        are out of service;

2            g.  Failing to construct and maintain accessible features; and

3            h.  Failing to ensure that Plaintiffs and others similarly situated have equal

4                access to their housing.

5        112.    Defendants' violations of the California Disabled Persons Act are ongoing.  They

6    have harmed and will continue to harm Plaintiffs in the future.

7        113.    Defendants' actions demonstrate a knowing and conscious disregard for the rights

8    of disabled tenants.  Such conduct justifies an award of punitive and exemplary damages in

9    addition to all other relief sought.

10       114.    Plaintiffs suffered actual harms and losses including but not limited to physical

11   and mental pain, fear, degradation, and emotional distress because of the discrimination that they

12   each experienced.

13       115.    Plaintiffs Lewis and Olison's harms and losses are ongoing so long as Defendants

14   do not modify their policies and procedures and provide fully accessible and safe facilities for

15   Plaintiffs and other persons with mobility disabilities.

16       116.    Plaintiffs have no adequate remedy at law to compensate them for their lost

17   opportunities of equally and fully enjoying the housing amenities for which they pay. Plaintiffs

18   therefore seek an order enjoining Defendants to make the required repairs and grant the necessary

19   reasonable accommodations in order to allow them equal access to Heritage Park's amenities, and

20   an order enjoining Defendants to take adequate steps to prevent any such discrimination in the

21   future.

22   WHEREFORE, Plaintiffs request relief as outlined below.

23

24                          **SIXTH CAUSE OF ACTION**
         **TORTIOUS BREACH OF THE WARRANTY OF HABITABILITY**

25       117.    Plaintiffs incorporate by reference the preceding paragraphs.

26       118.    A warranty of habitability is implied in every residential lease. *Green v. Superior*

27   *Court*, 10 Cal. 3d 616, 619-20 (1974) (en banc). The elements of an affirmative claim for tortious

28   breach of the warranty of habitability are: 1) [T]he existence of a material defective condition

affecting the premises' habitability, 2) notice to the landlord of the condition within a reasonable time after the tenant's discovery of the condition, the landlord was given a reasonable time to correct the deficiency, and 3) resulting damages. *Ghazaryan v. Shabazian*, No. LACV1708245JAKSSX, 2018 WL 6190347, at *5 (C.D. Cal. Aug. 2, 2018), citing *Erlach v. Sierra Asset Servicing, LLC*, 226 Cal. App. 4th 1281, 1297 (2014).

119.    A broken elevator is a material defective condition that impairs Plaintiffs safe habitation. Defendants are on actual notice that the elevators in the C/D building and the other two buildings have been inoperable or not functioning properly for months.

120.    Further, Defendants failure to address the security issues at Heritage Park when they know of the dangers posed to the residents there also violates the warranty of habitability. *See Penner v. Falk*, 153 Cal. App. 3d 858 (1984).

121.    Defendants' violations of the warranty of Habitability are ongoing.  They have harmed and will continue to harm Plaintiffs in the future.

122.    Defendants' actions demonstrate a knowing and conscious disregard for the rights of disabled tenants.  Such conduct justifies an award of punitive and exemplary damages in addition to all other relief sought.

123.    Plaintiffs suffered actual harms and losses including but not limited to physical and mental pain, fear, degradation, and emotional distress because Defendants failure to follow the law.

## SEVENTH CAUSE OF ACTION
### NEGLIGENCE
### [Cal. Civil Code § 1714]

124.    Plaintiffs incorporate by reference the preceding paragraphs.

125.    Defendants, as owners and managers of Heritage Park, have a non-delegable duty to Plaintiffs to ensure a safe path of travel to and from their units and amenities of the property. Part of this path of travel is an operable elevator.

126.    Defendants breached this duty by failing to properly maintain the elevators and repair them in both the normal course of business.

127.    Further, Defendants have a nondelegable duty to keep the premises safe and

habitable for tenants. They have breached this duty by failing to take appropriate action to stem the egregious and pervasive criminal activity that is making Heritage Park a truly dangerous place to live.

128.    As a direct and proximate result of the negligence of Defendants in failing to maintain the elevators or to maintain any policies related to ensuring a safe path of travel when the elevators are out of order, in addition to refusing to address the crime and danger that has plagued the complex and led to the elevator outages and exacerbation of Plaintiffs' mental health disabilities, Plaintiffs suffered and continue to suffer physical and emotional pain, fear and emotional distress.

129.    Defendants' refusal to provide disabled tenants with accessible paths of travel including functioning elevators, and address the criminal activity making tenancy at Heritage Park dangerous for Plaintiffs who all have both physical and mental health disabilities, particularly when on actual notice of these issues, demonstrates malice, fraud and oppression and conscious disregard for the law in general and the rights of disabled tenants in particular.  Such conduct justifies an award of punitive and exemplary damages in addition to all other relief sought.

130.    Defendants' negligence is ongoing.  They have harmed and will continue to harm Plaintiffs in the future.

131.    Defendants' actions demonstrate a knowing and conscious disregard for the rights of disabled tenants.  Such conduct justifies an award of punitive and exemplary damages in addition to all other relief sought.

132.    Plaintiffs suffered actual harms and losses including but not limited to physical and mental pain, fear, degradation, and emotional distress because of Defendants negligence.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment and the following specific relief against Defendants:

1.    Under the First through Fourth and Fifth and Sixth Causes of Action, for an order

1   enjoining Defendants, their agents, officials, employees, and all persons acting in concert with

2   them:

3          a.   From continuing the unlawful acts, conditions, and practices described in this

4               Complaint;

5          b.   To maintain Heritage Park's accessible features, including its elevators, so that

6               they are useable by all persons with physical disabilities;

7          c.   To implement security measures at Heritage Park;

8          d.   To train each of Defendants' employees and agents in accommodating the rights

9               and needs of disabled persons;

10         e.   To implement nondiscriminatory protocols, policies, and practices for

11              accommodating persons with disabilities; and

12         f.   To fully comply with the CESA from the *Holden v. Hilltop Group* lawsuit; and

13   2.   Plaintiff does not seek injunctive relief under Cal. Civ. Code § 55.

14   3.   That the Court retain jurisdiction over the Defendants until such time as the Court is

15        satisfied that Defendants' unlawful policies, practices, acts and omissions, as complained

16        of herein no longer occur, and cannot recur;

17   4.   Award to Plaintiffs all appropriate damages, including but not limited to statutory

18        damages, general damages, treble damages and punitive damages in amounts within the

19        jurisdiction of the Court, all according to proof;

20   5.   Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of

21        this proceeding as provided by federal and state law;

22   6.   Grant such other and further relief as this Court may deem just and proper.

23   Dated: April 16, 2025                    McGUINNESS LAW GROUP, PC

24

25                                           */s/ Deepinder Goraya*
                                             By Deepinder Goraya
                                             Attorneys for Plaintiffs

26

27

28

1

**DEMAND FOR JURY**

2          Plaintiffs hereby demand a jury for all claims for which a jury is permitted.

3

4     Dated:  April 16, 2025                McGUINNESS LAW GROUP, PC

5

6                                          _____/s/ Deepinder Goraya_____
                                           By Deepinder Goraya
7                                          Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28